IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

E.M. M.,[1]

      **Plaintiff,**

  v.

      Civil Action 2:22-cv-285
      Judge Michael H. Watson
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, E.M. M., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), and the administrative record (ECF No. 7). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

I.  BACKGROUND

Plaintiff filed his application for benefits on July 18, 2018, alleging that he has been disabled since March 7, 2018, due to throat cancer, stage 1 vocal cord, under radiation treatment; atypical nevi; dyslipidemia; high blood pressure; a brain aneurysm; chronic osteoarthritis; recurrent falls due to syncope; a history of multiple fractures due to falls and chronic depression. (R. at 168-74, 188.) Plaintiff's application was denied initially in April 2019 and upon reconsideration in September 2019. (R. at 64-95, 98-116.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 117-37.) ALJ Matthew Winfrey (the "ALJ") held a telephone hearing on October 1, 2020, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 30-63.) A vocational expert ("VE") also appeared and testified. (*Id.*) On November 23, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-29.)   The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  RELEVANT RECORD EVIDENCE

**A. Relevant Hearing Testimony and Statements to the Agency**

The ALJ summarized Plaintiff's relevant hearing testimony and statements to the agency as follows:

> [Plaintiff] has alleged disability due to throat cancer, stage 1 vocal cord, under radiation treatment; atypical nevi; dyslipidemia; high blood pressure; brain aneurysm; chronic osteoarthritis; recurrent falls due to syncope; a history of multiple fractures due to fall and chronic depression. [Plaintiff] endorsed difficulty

> with lifting, squatting, bending, standing, walking, kneeling and climbing stairs in an April 2, 2019 Function Report. He further noted he could not stand or walk for extended periods of time and tried to remain sitting as long as possible. Additionally, he indicated he no longer did any heavy lifting.
>
> At the hearing, [Plaintiff] testified he left his last job because he was no longer able to perform the job because it had required so much time on his feet. He also testified he had pains in his back and feet, and sometimes got lightheaded. He indicated he had to hold on the cart when grocery shopping and tried to go to smaller stores in order to limit the amount of walking he had to do. Regarding any problems with personal care and bathing, [Plaintiff] testified he had to get in and out of the tub slowly. He estimated he could lift maybe a six-pack of pop, walk from the street to his front door before needing to sit down and rest for 15 minutes before he could get up and walk again. He also testified he could stand for just a couple of minutes. He also testified that he used to have a real problem with calluses and psoriasis on his feet, but was pretty much cleared up. A typical day for him consisted of getting up and watching television. He also testified he did minimal cooking, laundry, dish washing and cleaning. Additionally, [Plaintiff] testified he had undergone 30 radiation treatments from June 2018 to August 2018 for throat cancer two years ago. He indicated his throat was still semi-swollen and he had slight difficulty with swallowing as a result of radiation. [Plaintiff] also testified he had syncope and had suffered multiple broken bones from fainting and falling. [Plaintiff] also testified that recent magnetic resonance imaging revealed a stress fracture on one vertebrae.

(R. at 21, citation to record omitted.)

### B. Relevant Medical Records

The ALJ summarized the relevant medical records concerning Plaintiff's physical impairments as follows:

> The evidentiary record documents [Plaintiff]'s complaints of musculoskeletal arthralgias and low back pain secondary to degenerative changes of the cervical, thoracic and lumbar spine. The evidentiary record also documents his history of chronic osteoarthritis. Imaging has revealed multiple thoracic and lumbar compression fractures of indeterminate age. This objective evidence certainly supports some physical limitations. However, the totality of medical evidence does not support the severity and frequency of limitations as alleged by [Plaintiff].

The record in this case contains little objective evidence to support [Plaintiff]'s reports of pain and functional loss. The evidentiary record does document [Plaintiff]'s back pain and musculoskeletal discomfort. While there have been subjective findings on examination such as limitations of motion due to pain, or pain on palpation on occasion, there is no evidence of persistent neurological deficits or signs of nerve root compromise. Musculoskeletal range of motion was full and there was no obvious bony deformity during his March 7, 2018 emergency room visit. There was also no midline tenderness to palpation, step-offs, crepitus or deformities in his neck. Moreover, neurologic strength and sensation were normal. [Plaintiff] denied any musculoskeletal symptoms or related changes and denied neurologic numbness and tingling on March 8, 2019. Moreover, examination found no midline axial musculoskeletal tenderness, no neurologic focal abnormalities and no focal weakness. [Plaintiff] was comfortable and in no acute distress on May 31, 2018. He was able to move his upper and lower extremities symmetrically without any gross weakness or ataxia. Rapid alternating movements in the upper extremities are symmetric. Strength, muscle tone and bulk were normal and neurologic sensation was intact to light touch. Additionally, [Plaintiff] has denied musculoskeletal arthralgias, back pain, neurologic focal weakness and joint swelling and examination has found normal musculoskeletal range of motion and normal neurologic strength and sensation on several occasions.

The evidence also fails to show that [Plaintiff] has consistently exhibited most of the signs typically associated with chronic, severe pain, such as muscle atrophy, spasm, rigidity, or tremor and [Plaintiff] has generally presented with a steady gait and ambulated independently without any observable difficulty, including on March 2, 2018 and March 12, 2018 when he demonstrated good gait ability with gait stress testing. Additionally, he ambulated independently and without apparent difficulty at his consultative psychological evaluation, but related he occasionally used a cane to assist with walking.

> Moreover, imaging studies have failed to reveal significant pathology in the spinal canal. For example, imaging performed during his March 7, 2018 emergency room visit revealed mild degenerative changes of the thoracic and lumbar spine. Moreover, there was multiple mild to moderate thoracic and lumbar vertebral body compression fractures of indeterminate age without definitive evidence of acute sharp fracture lines to suggest any acute fracture. Computed tomography revealed mild degenerative changes and multiple thoracic and lumbar vertebral body compression fractures, minimal compression of the superior endplate of T4, mild to moderate compression fracture of T5, minimal compression fracture involving the superior endplate of T7, a moderate compression fracture of T9, moderate anterior wedge compression fracture of T12, a moderate compression fracture of L4 primarily involving the superior endplate, mild to moderate compression fracture of L5. Imaging of his cervical spine revealed no evidence of cervical spine fracture. While there [were] multilevel degenerative changes of the cervical spine, alignment was normal. His treating emergency room physician opined [Plaintiff]'s fractures were likely chronic given the mechanism of his injury and lack of pain on examination of his spine. Further, clinical examinations have not identified signs of inflammatory disease, nor is there evidence of other signs that might be expected in the presence of a truly debilitating impairment such as bowel or bladder incontinence.

(R. at 22-23, citation to record omitted.).)

**C. Medical Opinions**

The ALJ summarized and weighed the medical opinions of Leigh Thomas, M.D. and Yeshwanth Bekal, M.D. as follows:

5

>   State Agency reviewing medical consultant Dr. Thomas reviewed the record at the initial level and concluded [Plaintiff] was able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; sit, stand and/or walk for a total of about 6 hours each in an 8-hour workday; push and/or pull with the right upper extremity frequently; reach overhead with the right upper extremity frequently; climb ramps and stairs, balance, stoop, kneel, crouch, and crawl without limitation; never climb ladders, ropes, or scaffolds and should avoid even moderate exposure to hazards, including unprotected heights. Reviewing medical consultant Dr. Bekal reviewed the record at the reconsideration level and affirmed the limitations opined by Dr. Thomas. The undersigned finds these prior administrative findings largely persuasive. Although neither examining nor treating physicians, these experts are medical doctors with knowledge of the Social Security Administration's program and requirements and are well-qualified by reason of training and experience in reviewing an objective record and formulating an opinion as to physical limitations. Notwithstanding their opinion with respect to limitation in [Plaintiff]'s right upper extremity, the limitations they assessed are otherwise generally consistent with the objective record in totality as well as his conservative treatment of degenerative disc disease of the cervical, thoracic and lumbar spine. While [Plaintiff] was treated for pain and impingement in his right shoulder on January 8, 2019, the evidentiary record at the administrative hearing level fails to document any ongoing treatment or persistent symptomology in his right shoulder that would support any right upper extremity limitation.

(R. at 23, citation to record omitted.).)

### III. ADMINISTRATIVE DECISION

On November 23, 2020, the ALJ issued his decision. (R. at 12-29.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31,

2022. (R. at 18.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 7, 2018, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine. (*Id.*)  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 20.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 CFR 404.1567(c). (*Id.*)

At step four of the sequential process, the ALJ determined that Plaintiff has no past relevant work. The VE testified that plaintiff had past relevant work as a hand candy molder and

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

a cook helper, but because these jobs were part-time, Plaintiff's earnings never met the substantial gainful activity level. (R. at 24-25.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 25-26.) The ALJ therefore concluded that Plaintiff has not been disabled since March 7, 2018. (R. at 26.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

8

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

As near as the Court can glean from his Statement of Errors, Plaintiff contends that: (1) the ALJ should have called a medical expert to evaluate Plaintiff's impairments, "without the benefit of any medical expert testimony, the ALJ unilaterally usurped medical expertise opinion and determined without explanation or separate findings that [Plaintiff] was not significantly limited in his ability to perform basic work activities;" (2) "The ALJ should have determined, based upon the record of his medical impairments, that [Plaintiff] had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments;" (3) the ALJ erroneously determined that Plaintiff had the residual functional capacity to perform the full range of medium work; and (4) the ALJ failed to rely on the VE's testimony that the Plaintiff could not work based on counsel's hypothetical. (ECF No. 8 at PageID 529-32.) Plaintiff's Statement of Errors consists of a few pages of bullet points, without citation to any authority or the record.

As an initial matter, Plaintiff has failed to comply with the Court's Order which specifically indicated that "[a]ll briefing must include references to the administrative record."

(ECF No. 5 at PageID #9.)  Moreover, Plaintiff has waived any arguments directed at each step of the ALJ's analysis because he has made no effort to develop them.  *See Katherine K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-563, 2022 WL 71628, at *8 n.11 (S.D. Ohio Jan. 7, 2022) (citing *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived."); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (holding that the Court will not "formulate arguments on the Plaintiff's behalf," but will instead "limit [its] consideration to the particular points that [Plaintiff] appears to raise in her brief on appeal."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Nevertheless, in the interest of justice, the undersigned will attempt to address the issues Plaintiff seems to have with the ALJ's decision.

    A. Met or Equaled Any Listing

The purpose of step three is to streamline the agency's decision-making process by identifying claimants whose impairments are so severe that they would "prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); 20 C.F.R. § 404.1525.  Because an affirmative finding at step three means that the claimant is per se disabled, the criteria are substantial and higher than the standard for disability under the Social Security Act.  *Id*.  A listing level impairment precludes all work, not just work above the

substantial gainful activity level, as required under the Social Security Act's definition of disability. *Id*.

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The claimant has the burden to prove that all the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

Substantial evidence supports the ALJ's determination that Plaintiff did not meet or medically equal any listing and Plaintiff has done nothing to show that he did. The ALJ's conclusions at step three are supported by the only medical sources in the record to consider whether Plaintiff met or medically equaled a physical listing. Reviewing doctors Leigh Thomas, M.D. and Yeshwanth Bekal, M.D. considered the listings and determined that Plaintiff did not meet or medically equal any listing and could perform a range of work. (R. at 64-80, 82-94.) The ALJ concluded that their findings were largely persuasive. These findings are substantial evidence

supporting the ALJ's step three findings. *See Brauninger v. Comm'r of Soc. Sec.*, No. 18-3495, 2019 WL 2246791, at *7 (6th Cir. 2019) (holding that a medical expert's opinion, in combination with other objective medical evidence, constituted substantial evidence to support an ALJ's step three determination). Plaintiff, on the other hand, cites to no medical opinion supporting his argument that he meets or medically equals any listing. Substantial evidence supports the ALJ's findings and Plaintiff has not met his burden at step three. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.912(a), 404.920(a)(4)(i)-(iv) (noting that claimant bears the burden of production at steps one through four).

### B. The RFC Determination

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and

12

evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.* If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported ... and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors. . . ." 20 C.F.R. § 416.920c(b)(3).

Here, the ALJ reasonably determined Plaintiff's physical RFC.[3] After appropriately considering the relevant objective medical evidence and properly evaluating the prior administrative findings and opinions, the ALJ determined that while Plaintiff had physical limitations affecting his work-related functioning, he was not disabled.

### C. Presence of Medical Expert at the Hearing

Plaintiff seems to suggest that the ALJ erred in failing to have a medical expert testify at the hearing, this contention is not meritorious. An ALJ is not required to solicit medical expert testimony. *Walker v. Astrue*, No. 3:11–CV–142, 2012 WL 3187862, at *7 (S.D. Ohio Aug. 3, 2012) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009)). Rather, it is within the ALJ's discretion to view the complete record and determined whether a medical

---

[3] To the extent he makes one, Plaintiff's argument attacking the adequacy of the hypothetical question is nothing more than a repackaging of his RFC argument. The ALJ's hypothetical question to the vocational expert properly excluded limitations that were not credibly supported by the evidence. *Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Accordingly, the undersigned finds this argument to be without merit.

expert is necessary. *Id*. (citing *Simpson*, 344 F. App'x at 189). Here, Plaintiff failed to develop his argument that the ALJ erred in choosing not to solicit testimony from a medical expert. The entirety of Plaintiff's argument in this regard is as follows:

> HOWEVER, without the benefit of any medical expert testimony, the ALJ unilaterally usurped medical expertise opinion and determined without explanation or separate findings that CLAIMANT was not significantly limited in his ability to perform basic work activities.

(Pl's Br. at p. 2.) Without a more developed argument articulating a specific need for a medical expert and a reason to conclude that the ALJ abused his discretion in failing to make one available, the undersigned finds no error in the ALJ's determination that such an expert was unnecessary.

In short, generously assessing his Statement of Errors, Plaintiff is merely arguing that the ALJ should have weighed the evidence differently. However, it is "[a]dministrative law judges [who] are responsible for reviewing the evidence and making administrative findings of fact and conclusions of law[.]" 20 C.F.R. § 404.1513a(b); *see also Schmiedebusch v. Comm'r Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013). And to the extent that Plaintiff accuses the ALJ of "cherry picking" evidence, such an allegation "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

For all these reasons, the undersigned finds that the ALJ did not err in his consideration of the record evidence. Substantial evidence supports the ALJ's decision.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:	August 24, 2022                                  /s/ *Elizabeth A. Preston Deavers*
                                                                   Elizabeth A. Preston Deavers
                                                                   United States Magistrate Judge